## TAYLOR *v.* STATE.

Opinion delivered November 5, 1898.

1. TAX SALE—AMENDMENT OF RECORD.—A county clerk, who was deputy of his predecessor, has no authority, after expiration of the latter's term of office, to amend the record of the list and notice of lands sold for taxes during said term by attaching thereto a certificate showing that such list and notice were duly published. (Page 599.)

2. SAME—CONCLUSIVENESS OF RECORD.—While the record of publication of a notice of tax sale and of the certificate thereof is made evidence of the facts therein contained (Sand. & H. Dig., § 6606), it is admissible to show that what purports to be such a record is a supposititious one, and that no such record is in existence. (Page 599.)

3. SAME—VALIDITY.—A tax sale is void where the county clerk failed to certify to the publication of the list of lands and the notice of sale, as required by Sand. & H. Dig., § 6606. (Page 600.)

4. SAME—POSSESSION.—The state has no constructive possession of unoccupied land under a void tax title. (Page 600.)

5. TRESPASS—POSSESSION.—In order to recover in an action of trespass, plaintiff must have either actual or constructive possession. (Page 600.)

Appeal from Greene Circuit Court.

FELIX G. TAYLOR, Judge.

### STATEMENT BY THE COURT.

This action was brought, under the provisions of Sand. & H. Dig., ch. 85, p. 928, to recover damages for trespass upon

certain lands, which it was alleged the state owned, by cutting and removing therefrom certain timber and ties. The answer denied the taking of the timber and ties, as alleged in the complaint, and denied that the state was the owner of the land, timber and ties.

On the trial, over the objections of appellants, and to which they at the time excepted, the court permitted the appellee to introduce in evidence what purported to be a copy of the records of the state land office of "Forfeited Lands in Greene County," certified to be a true copy of such record under the hand and seal of the commissioner of state lands, and showing the forfeiture to the state, in three separate tracts, of the lands described in appellee's complaint, in the year 1892, for the taxes of 1891. Following such certificate was what purported to be a copy of a certificate from the clerk of Greene county that it was a true and correct list, and a copy of a second certificate from the same source that the same had been recorded. The appellee also introduced a certified copy of the records of the state land office, showing the donation of the lands by certain persons and the subsequent relinquishment thereof by them.* Also a similarly authenticated copy of the records of the same office, showing a sale and conveyance of the lands mentioned in section 34 to J. L. Carroll by the commissioner, June 11, 1895, for $200, and of the south half of the land described in section 33 to W. J. Wood, March 25, 1895, for $100.

The appellee · read in evidence the deposition of J. F. Ritchie and C. B. Myers, commissioner and deputy commissioner of state lands, who stated that, in making these two sales, all timber previously cut from the land was reserved.

A. C. Johnson, for appellee, testified that between January, 1895, and June 11, 1895, the appellants had cut from the lands described in appellee's complaint in section 34, 118,518 feet of timber, worth $1 per thousand, and 2,800 ties, worth 10 cents each; and between January 1, 1895, and March 25, 1895, they had cut from the lands described in appellee's complaint in section 33, 546 ties, worth 10 cents each. He had notified appellants that land and timber belonged to the state,

and in his capacity as deputy timber inspector had forbidden them cutting the timber.

The appellants then introduced the record of the list and notice of the sale of lands in Greene county in 1892 for the taxes of 1891, showing the lands described in appellee's complaint advertised for sale as delinquent for the taxes of 1891, in three separate tracts, to which record was attached a certificate showing the publication of said notice and list on "May 12, 1892, and May 19, 1892, the first insertion being 30 days before June 8, 1891, which was the date of sale." This certificate was dated May 12, 1892, and signed "T. B. Kitchens, Clerk, by J. R. Miller, D. C."

Appellants read in evidence the deposition of C. W. Stedman, who stated that J. R. Miller succeeded T. B. Kitchens as clerk of Greene county, and witness was deputy under Miller, having had no connection with the office and having done no work whatever therein during Kitchens' incumbency. He began working in the office in December, 1892, and continued until November, 1894. Witness here examined the record of the list and notice of the sale of lands in Greene county in 1892 for the taxes of 1891, and stated that he prepared the certificate of publication thereto attached, and Miller signed it after Kitchens was no longer clerk, after Miller was clerk and after witness began work for Miller as his deputy. Miller instructed him to prepare the certificate, saying that it had been overlooked.

A further statement of facts is unnecessary. The judgment was for appellee, and this appeal taken.

*Block & Sullivan,* for appellants.

The judgment against the bond was erroneous. Sand. & H. Dig., § 343; 37 Ark. 528; 54 Ark. 13. It was also error to give judgment against the sureties for an amount in excess of the amount secured. 9 Wheat. 702; 81 N. Y. 406; 18 Pac. 228; 70 Mo. 524; 10 *id.* 560; 22 N. W. 730; 6 How. 298; 61 N. Y. 39; 16 N. E. 254; 28 N. W. 157; 47 Am. Rep. 140. The clerk's certificate of forfeiture is the best evidence to show its contents, and the certified record from the land office was inadmissible for such purpose. Sand. & H. Dig., § 6627; 55 Ark. 196; 47 Ark. 298; 33 *id.* 833; 33 S. W.

879. If it had been admissible, it was not· sufficient proof. No officer's certificate is evidence, unless made so by law. 61 N. W. 687; 28 S. W. 1056; 47 Ark. 298; 33 *id.* 833. The forfeiture ·was void because of illegal fees charged. 56 Ark. 93; 61 Ark. 36; Sand. & H. Dig., § 6614. Also it was inadmissible because the certificate of publication was not attached to the record at the time of sale. 34 Fed. 701; S. C. 140 U. S. 634; 55 Ark. 218. This omission of the clerk could not be supplied by him after his term expired. Mech. Pub. Off. §§ 396, 509; 10 Martin (La.), 479; S. C. 13 .Am. Dec. 338; 76 N. Y. 316. Actual possession, or title sufficient to show a right of possession, in plaintiff was essential; and since the tax title is void, appellee must fail on this ground. 1 Ark. 448; *id.* 470; 8 *id.* 472; 10 *id.* 16; 14 *id.* 483; 26 Ark. 505; 44 Ark. 77; 1 N. Y. 528; 65 N. Y. 125; 71 *id.* 380; 12 N. W. 62; 17 N. W. 314; 38 N. W. 458; 21 Wall. 58; 20 Pac. 780; 58 N. W. 288; 8 Ark. 406–414; 11 Pac. 281; 13 N. W. 426; 35 ·N. W. 62. A constructive possession of .premises cannot arise from a void conveyance. 53 N. Y. 432; 61 N. Y. 67; 57 Ark. 523; 60 *id.* 163.

*E. B. Kinsworthy*, Attorney General, and *Luna & Johnson*, for appellee.

The court found that appellants were trespassers, and the evidence introduced by appellants shows that the lands were forfeited to the state. Hence appellant has no standing in court (59 Ark. 370), and the state has proved *prima facie* title. The duly certified transcript of the records of the state land commissioner was admissible and sufficient evidence. Sand. & H. Dig·., § 2886; 47 Ark. 298; 55 *id.* 286. No one except the original owner or some one claiming under him could be permitted to assail the tax title. Sand. & H. Dig., § 6627; 55 Ark. 196. A trespasser will not be permitted ·to show an outstanding title in a stranger. Sedg. & W. Tr. Tit. §§ 58, 477, 718; 2 Waterman, Tres. § 1066; 17 Pick. 388; 6 Pa. St. 210; 47 Am. Dec. 455; 43 *id.* 556, *et seq.*; 22 Ark. 82–87; 41 Ark. 17–21; 59 Ark. 370; Black, Tax Tit. §· 248; 2 Greenl. Ev. § 618; 1 Ark. 472; 55 *id.* 217;·10 Ia. 587; 52 Conn. 50. The tax sale record can not be contradicted or impeached by parol. 61 Ark. 36; 33 S. W. 959; 55 Ark. 218.

*Block & Sullivan,* for appellants, in reply.

Trees cut without the landowner's consent belong to him, and the legislature has no power to take them from him and give them to one claiming under a merely colorable title. 21 Wall. 196; 12 N. Y. 209; 68 N. W. 173; 67 N. W. 918. None of the fees of the clerk for services under the revenue laws are to be paid by the landowner or charged to the delinquent tract. Sand. &. H. Dig., § 3310; 12 Ark. 60; 11 Nev. 382; 129 Mass. 135; 79 Wis. 89; 3 Edw. Ch. 56; 10 Minn. 296. The fee of the clerk for transferring the land on the tax books must be paid by the purchaser. 127 Ill. 431; 138 *id.* 590; 141 *id.* 215. The record, showing the lands to be forfeited, since it does not show that the prior essential requirements have been complied with, is not alone proof of the forfeiture. Black, Tax Tit. §. 443; 55 Ark. 218; 18 So. Car. 538; 14 Minn. 355; 131 Ill. 537.

WOOD, J., (after stating the facts). It may be conceded that the certified copy of the original clerk's certificate of lands forfeited to the state for the non-payment of taxes made by the state land commissioner, which he states was made from the original on file in his office, was properly admitted in evidence, and that it was sufficient to show *prima facie* title in the state to the lands in controversy. Still, under the facts of this case, that would not enable the state to maintain this action. For it is shown by the uncontradicted proof that there was no certificate attached to the record of advertisement for the sale of the lands showing its publication, as required by Sand. & H. Dig., § 6606. Such a certificate was attached, but it appears that it was done long after the sale occurred, and long after the one who was clerk before and at the time of the sale had gone out of office, and the certificate that appears of record was made in his name and signed by his deputy, Miller, who was clerk at the time the certificate was attached. While the record of publication and the certificate thereof is made evidence of the facts in said list and certificate contained, and while said facts can not be controverted or supplemented by evidence *aliunde*, it is perfectly legitimate to show that what purports to be the record is supposititious, and that there was in fact none in existence.

As there was no record of the publication of these lands for sale, and no certificate thereof, according to the requirements of Sand. & H. Dig., § 6606, said sale was absolutely void, and the state acquired no title thereunder. *Martin* v. *Allard*, 55 Ark. 218.

Now, the statute under consideration only gives the right of action to the owner. Sand. & H. Dig., § 3895. The state in this case, it appears, was not only not the owner, but did not have either the actual or constructive possession of the land. Under the statute of some states, even a void tax title draws after it constructive possession of unoccupied land. But such is not our law. *Gates* v. *Kelsey*, 57 Ark. 523; *Woolfork* v. *Buckner*, 60 *id.* 163.

When the sovereign assumes the attitude of a litigant, in the absence of some statutory provisions to the contrary, she is subject to the same rules and principles as apply to other litigants who invoke the aid of the courts and the processes of the law to enforce their rights or redress their wrongs.

This court has repeatedly held that, in order to entitle one to maintain an action of trespass to realty, he must have either the actual or constructive possession thereof. He must have the legal title to, or be in the actual possession of, the land. *Ledbetter* v. *Fitzgerald*, 1 Ark. 448; *Wilson* v. *Bushnell*, 1 *id.* 470; *Smith* v. *Yell*, 8 Ark. 470; *Brock* v. *Smith*, 14 *id.* 433; *McKinney* v. *Demby*, 44 *id.* 74. See also *Merrick* v. *Britton*, 26 *id.* 505; *Gunsolus* v. *Lormer*, 12 N. W. (Wis.) 62; *Johnson* v. *Elwood*, 53 N. Y. 432; *Thompson* v. *Burhans*, 61 N. Y. 67; and other cases cited in appellant's brief from other states are instructive.

This statute does not broaden that doctrine. On the contrary, if anything, it narrows and restricts it by giving the relief provided to the owner. It requires, according to our decisions, the legal title to put one in the constructive possession of land. See Arkansas cases cited *supra*. We are of the opinion therefore that, in order to maintain the present action, the state should be required to show that she is the owner of the land upon which the alleged trespass occurred. If she were permitted to maintain the action upon a mere *prima facie* title, what would hinder the true owner from also maintaining the

action, and thus subjecting the trespasser to two actions and a double recovery for the one wrong?

The state having failed to show that she is the owner of the land, it follows that the court erred in its declarations of law. The judgment is therefore reversed, and the cause is remanded for new trial.

BATTLE, J., absent.

BUNN, C. J., (dissenting.) This is an action by the state against the defendants, Taylor and Routh, in the Greene circuit court, for cutting and removing timber from the lands in the complaint mentioned as the lands of the state, under the provisions of chapter 85 of Sand. & H. Dig.; the damages being laid at double the value of the timber alleged therein to have been cut and removed as aforesaid.

The state claims title by a tax forfeiture and sale for the taxes of 1891, made in the year 1892. The plaintiff exhibited with her complaint a certificate of the clerk of Greene county showing the said lands to have been struck off to the state at said tax sale, and also the certificate of the commissioner of state lands, showing the lands in controversy to be the lands so certified to the state, and also, in both instances that the certificates were of record.

The defendants answered, merely denying taking the timber and ties as alleged, and also denying title in the plaintiff. Evidence, in addition to the copies of the records, was introduced by the state as to the cutting and removal of the timber and ties by the defendants and the value thereof.

The defendants saved exceptions to the introduction in evidence of the copy of the records in the office of the commissioner of state lands, and then introduced in evidence the record of the list and notice of the sale of lands in Greene county, in 1892, for the taxes of 1891, showing the lands described in plaintiff's complaint advertised for sale as delinquent for the taxes of 1891 in three separate tracts, to which record was attached a certificate showing the publication of said notice and list on May 12, 1892, and May 19, 1892, the first insertion being 30 days before June 8, 1892, which was the date of sale. This certificate was dated May 12, 1892, and signed T. B.

Kitchens, clerk, by J. R. Miller, D. C. Defendants also intro-duced the record of lands of Greene county sold to the state in 1892 for the taxes of 1891, showing a sale of the lands men-tioned in plaintiff's complaint in three tracts for the taxes of 1891 and penalty, together with the following charged against each tract as costs of sale, to-wit: Clerk's fees, 25 cents; ad-vertising, 25 cents; and sheriff's fees, 10 cents,—aggregating 60 cents, some or all of which they claim to be overcharges. They also read in evidence the deposition of C. W. Stedman (deputy of Miller who succeeded Kitchens as clerk of said county) who had not served at all under Kitchens, showing that, at the instance of Miller, he himself made out or signed the certificate of the notice of sale, Miller saying at the time that it had been overlooked.

Without going into an inquiry as to whether or not any of these defects, or all of them, had the effect of invalidating the tax sale and forfeiture to the state, we address ourselves to the task of ascertaining whether or not a wilful trespasser, claim-ing neither title nor right of possession, is permitted to allege and show defects in a plaintiff's title which is good on its face, and therefore makes a *prima facie* case for him; and, secondly, whether such a trespasser is permitted to show a defect in the state's tax title, good on its face, by testimony showing the omission or neglect of officers in the proceedings anterior to the sale.

The court decided in *Cairo & F. R. Co.* v. *Parks*, 32 Ark. 131, that section 5206, Gantt's Digest, cut off all defenses against a tax deed except the few therein named; and that, in so far, the section was unconstitutional, upon the ground that the deed, except in the respects named, was made conclusive evidence. Subsequently the legislature made changes in corresponding sections of our revenue laws, by making the recitals in deeds *prima facie* evidence only; and also in giving the right and privilege to him who was the owner at the time of the sale, or who had become the owner by purchase or otherwise from the state or federal government, or one holding under the owner (but to no others), to contest the tax title by showing that he had in fact paid the taxes, and through mistake of the officers the same were sold notwithstanding such payments; or that the

officers selling the same had been guilty of fraud, or fraud in the purchaser. Being already privileged to show that his land was not subject to the tax, these provisions were supposed to cover any meritorious defense which an owner might have against the forfeiture and sale of his lands, and hence, while all decisions subsequent to the one cited refer to it, yet they all hold the amended statute (see sections 6623, 6624 and 6625, Sand. & H. Dig.), as cutting off only defenses on the ground of mere irregularities not mentioned in their notices, and hence, with that construction upon them, the present sections are not unconstitutional in any respect. *Radcliffe* v. *Scruggs,* 46 Ark. 96; *Townsend* v. *Martin,* 55 Ark. 192.

While this court has gone to the full extent of permitting attacks to be made on tax deeds, yet no case is found where this right is given at all to any one except the owner or one holding and claiming under him, for he is the person named in the acts as the person who will be permitted to make these attacks. This being the state of the law, can it be said that a wilful trespasser can defend at all? He surely has no merit in any defenses he may make, and it is only because of the meritoriousness of any defense that the strict rule of the statute has been modified by the courts.

In ordinary suits in ejectment, notwithstanding the old rule that a plaintiff must rely upon the strength of his own title, and not upon the weakness of that of his adversary, yet the rule has been growing more and more relaxed, so that, in the modern state of the law, it is a mooted question whether a wilful trespasser will be allowed to contradict a *prima facie* title, because of the fact that, however successful he may be in showing the plaintiff's title is not the better, he can never show that he has any. But it is unnecessary to discuss this phase of the question.

If the defendant trespasser desires to protect himself from claims for damages from two claimants, it is quite easy for him to have the owner made a party to the suit, and indeed the trial court should have done this, even without his motion.