HONEYCUTT v. SHERRILL, TRUSTEE.

4-7347                                      179 S. W. 2d 693

Opinion delivered May 1, 1944.

*Claude B. Brinton,* for appellant.

*Frierson & Frierson, Chas. D. Frierson,* for appellee.

ROBINS, J.   Appellant, who claims title to the land involved herein under a donation certificate and donation deed from the State of Arkansas, seeks to reverse the decree of the lower court, by which it was adjudged that appellee is the owner thereof, by virtue of a conveyance to him by the Cache River Drainage District.

This land is situated in the Cache River Drainage District. The assessments due thereon to said district for the years 1924, 1925, 1926 and 1927 not having been paid, suit to foreclose same was instituted in the chancery court, the land was sold under decree of the court and deed therefor executed by the court's commissioner to the district on January 2, 1928.

The state and county taxes on the land were not paid for the year 1931, and it was forfeited and sold to the state in 1932. This forfeiture was duly certified on December 3, 1934.

Proceeding under the provisions of Act 119 of the General Assembly of Arkansas of 1935, approved March 19, 1935, the State of Arkansas brought a suit in chancery court to confirm its title. On November 7, 1936, the drainage district filed in the confirmation suit an intervention setting up that the land had been illegally assessed and that the forfeiture to the state was void. This intervention was sustained, the forfeiture to the state canceled and the title of the drainage district confirmed by decree dated May 9, 1939.

Appellant obtained donation certificate for this land from the State Land Commissioner on February 22, 1939, immediately entered into possession of the property and remained in open and notorious possession thereof thereafter and up until the filing of the instant suit. Appellant cleared 60 acres, built three small dwelling houses, three small barns, fenced 40 acres for pasture, put a pump at each house, built two smokehouses and built a chicken house for each dwelling. During each year of his occupancy he cultivated from eleven to fifteen acres in cotton, from fifteen to twenty acres in corn, and also raised some cane and soy bean hay.

Appellee instituted this suit (originally an ejectment suit to recover the land) against appellant in the circuit court on March 18, 1942. The case was transferred to chancery court on motion of appellant.

By § 8925 of Pope's Digest of the laws of Arkansas, it is provided: "No action for the recovery of any lands,

or for the possession thereof against any person or persons, their heirs and assigns, who may hold such lands by virtue of a purchase thereof at a sale by the collector, or Commissioner of State Lands, for the nonpayment of taxes, or who may have purchased the same from the State by virtue of any act providing for the sale of lands forfeited to the State for the nonpayment of taxes, or who may hold such land under a donation deed from the State, or who shall have held two years actual adverse possession under a donation certificate from the State, shall be maintained, unless it appears that the plaintiff, his ancestors, predecessors, or grantors, was seized or possessed of the lands in question within two years next before the commencement of such suit or action, and it is hereby intended that the operation of this act shall be retroactive.''

In discussing the operation and effect of this statute Chief Justice HILL, in the case of *Dickinson* v. *Hardie,* 79 Ark. 364, 96 S. W. 355, said: ''This is purely a statute of limitations, and runs against void sales, as well as voidable sales or regular sales. The statute is not in favor of those holding under valid deeds issued pursuant to valid tax forfeitures and valid sales, but is in favor of the possession for two years under deeds therein mentioned, . . . A statute of repose is not needed in favor of purchasers at valid tax sales. The validity of the sale and precedent proceedings effectually carries the title, and renders unnecessary such statutes, and they are enacted for the benefit of those acquiring these State titles and quieting these questions after two years possession under them. This whole matter was gone into fully and conclusively in the recent case of *Ross* v. *Royal,* 77 Ark. 324, 91 S. W. 178.'' Other cases in which the effect of this statute has been considered are: *Carpenter* v. *Smith,* 76 Ark. 447, 88 S. W. 976; *Bradbury* v. *Dumond,* 80 Ark. 82, 96 S. W. 390, 11 L. R. A., N. S. 772; *Chavis* v. *Henry,* 205 Ark. 163, 168 S. W. 2d 610; *Terry* v. *Drainage District No. 6, Miller County,* 206 Ark. 940, 178 S. W. 2d 857; *Sims* v. *Petree,* 206 Ark. 1023, 178 S. W. 2d 1016.

The rule laid down in all of these cases is that this statute is a statute of limitation, and that actual, adverse possession under a tax deed from the State Land Commissioner (and, since the amendment by Act No. 7 of 1937, approved January 26, 1937, under a donation certificate) vests a good title in the occupying holder of the donation certificate or deed, regardless of any defect in the tax sale under which the state acquired title.

In the case at bar it is shown that appellant obtained a donation certificate for this land on February 22, 1939, immediately went into possession thereunder and occupied the land adversely for more than two years before the institution of the instant suit. The fact that the drainage district was the holder of the record title to the land did not change the effect of his occupancy, as we have held that the rights of an improvement district may be barred by adverse possession. *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475.

It is argued on behalf of appellee that the act of the legislature extending the benefit of the two year statute of limitation to holders of donation certificates was passed after the drainage district acquired title and during the pendency of the state's confirmation suit. But this act was in force at the time appellant obtained his donation certificate, and his rights are necessarily governed by said act.

It is also urged on behalf of appellee that appellant, having purchased during the pendency of the suit by the state to confirm its title, is bound by the result of that suit, under the general doctrine that one who purchases land *pendente lite* must abide by the determination of the suit. But the only effect of the decree relied upon by appellee was to declare that the sale to the state was void, a fact which appellant might concede and yet prevail by reason of his adverse possession for two years under the donation certificate. The fact that the sale by which the state obtained title was a nullity does not affect the validity of the title of one who enters land under a deed from the state or a donation certificate and holds it adversely for two years. Appellant was not relying

upon the state's title, which was held void in the chancery proceeding, but upon his donation certificate and possession thereunder, and, for that reason, his title was not affected by the decree of the chancery court declaring the forfeiture to the state void. Appellant's donation certificate was not canceled, nor was its validity challenged in the proceedings in the chancery court.

It is argued by appellee that appellant's occupancy of the land did not amount to an adverse holding thereof by him. The testimony shows that appellant entered upon the land, cleared up 60 acres of it, built three dwelling houses with outbuildings upon it, cultivated it, raised and gathered crops thereon. These acts by appellant amounted to adverse possession. *Sims* v. *Petree, supra.*

Nor is appellant's claim affected by the fact that, after he had been in possession of the land under his donation certificate for more than two years, he attempted to purchase from the drainage district. After he had held the land adversely under his donation certificate for the two year period fixed by the statute his title became good by limitation and would not be divested out of him simply because he did some act that might be construed as inconsistent with his claim of ownership. *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444; *Blackburn* v. *Coffee,* 142 Ark. 426, 218 S. W. 836; *Mustain* v. *Smith,* 187 Ark. 1163, 63 S. W. 2d 537; *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475.

The period of limitation provided by § 8925 of Pope's Digest, *supra,* is a short one, but the policy of the state in such matters is one exclusively for determination by the legislative branch. Doubtless the legislature was influenced by a conviction that sound public policy requires that the state afford a measure of security to those who are willing to go upon land abandoned and permitted to forfeit for taxes by the original owner, clear up and put same in cultivation, and thereby make it possible for the state and the local taxing units to collect revenue therefrom. Certainly we cannot say that the legislature did not have the right to enact such a law, and, since

appellant has brought himself within the terms of this act, he must be given the protection thereof.

While the drainage district and appellee, its grantee, are barred by the statute from prosecuting a possessory action for the land here involved, this does not mean that the right of the district to maintain a suit to enforce payment of delinquent assessments would be likewise barred. On the contrary, a lienholder has been held not to be barred by this statute from foreclosing his lien. *Wright* v. *Walker,* 30 Ark. 44; *Rural Realty Company* v. *Buckner,* 203 Ark. 474, 158 S. W. 2d 17. The Cache River Drainage District in apt time foreclosed its lien on this land, and its deed to appellee should in equity be treated as an assignment *pro tanto* to appellee of its judicially established lien, and appellee has a right to require from appellant re-imbursement of the amount paid by him to the district. *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475.

The decree of the lower court is accordingly reversed and this cause is remanded with directions that the title to the land be quieted in appellant, subject to a lien in favor of appellee, to be enforced as the lower court may deem proper, for the amount which appellee paid to the drainage district as purchase money for the land, and also the amount of any general or special taxes paid by appellee, with interest at the rate of six per cent. per annum from the date of all such expenditures by appellee, the costs of both courts to be adjudged against appellee.